UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | CRIMINAL ACTION NO. 19-40049-3-TSH |
| v. | ) ) ) ) |  |
| AMANDA FORD | ) ) |  |
| Defendant. | ) ) |  |

**MEMORANDUM OF DECISION AND ORDER
ON DEFENDANT'S MOTION FOR RELEASE**
April 7, 2023

**HILLMAN, S.D.J.**

On November 20, 2019, Defendant Amanda Ford ("Ford") was indicted for conspiracy to distribute and possession with intent to distribute cocaine, fentanyl, cocaine base, and heroin. She pled guilty to one count of conspiracy on December 2, 2021, and was sentenced to twenty-four months in prison for her role in the conspiracy. On April 13, 2022, Ford filed an appeal of her sentence on April 13, 2022, and now moves for Release Pending appeal. At the time Ford filed this motion on January 26, 2023, she had completed ten months of her twenty-four-month sentence. For the following reasons, the Court ***denies*** the motion for release.

Ford was indicted after an investigation into a drug ring run by Pedro Baez and Anthony Baez. Throughout the investigation, law enforcement intercepted multiple phone calls implicating Ford, by Pedro Baez agreeing that she would deliver the drugs or confirming she would transport the dealer to the deal, and confirmed her involvement in at least two drug deals involving cooperating witnesses. Days before police conducted a raid of Pedro's residence,

investigators also intercepted a call to Pedro in which Ford agreed to supply a customer with drugs and admitted that she was monitoring the area around his house for police presence.

When police raided the Baez residence three days after the last intercepted phone call, they recovered two stores of heroin/fentanyl mixture that they attributed to Ford, both contested here. The first was 1.356 grams of the mixture which the police found inside a purse in a bedroom, which Ford admitted she stayed in occasionally. The second, more consequential the mixture of 144.3 grams was found in Pedro Baez's room. These were both attributed to Ford based on the theory that the drugs' location was foreseeable to Ford because she lived there and regularly delivered drugs for the conspiracy.

At the outset of the sentencing hearing, the Court stated that it had read the initial and the final PSRs, and the parties memoranda. Ford objected to the sentencing guidelines calculation, asserting primarily that the 144.3 grams of the mixture was improperly attributed to her. Accordingly, Ford asserts that level 15 was the proper sentencing level, not 23. After hearing the objection and considering the PSR and other arguments made, this Court stated, "All right. I am not going to adjust the guidelines. I think they are properly calculated." After hearing further argument on the appropriate sentence for Ford, Judge Hillman imposed a downward variance and sentenced Ford to twenty-four months in prison. Ford timely filed an appeal and now asks this Court to release her pending the appeal.

## Standard of Review

When a defendant is sentenced to a term of imprisonment and thereafter appeals their conviction or sentence, the defendant may request that they be released on bail pending the outcome of their appeal. *See* 18 U.S.C. § 3143(b). In order to be released on bail, the defendant must prove to the court by clear and convincing evidence: (1) "that the person is not likely to flee

or pose a danger" to citizens or their community; and (2) "that the appeal is not for the purposes of delay and raises a substantial question of law or fact likely to result in . . . a sentence that does not include a term of imprisonment," or a reduced sentence equal to or less than the amount of time already served. 18 U.S.C. § 3143(b)(1)(A-B). There is no presumption in favor of release in motions brought under this title; instead, detention is mandatory unless such defendant can prove the elements of § 3143(b) are satisfied. *See United States v. Colon-Munoz*, 292 F.3d 18, 20 (1st Cir. 2002); *see also United States v. Guzman*, No. 15-10338-7-FDS, 2020 WL 1974332, *1 (D.Mass. April 24, 2020).

## Discussion

Ford has failed to satisfy the requirements of § 3143(b) because she has not raised a substantial question of fact or law that is likely to result in a reduced sentence. Although she has arguably shown that she is not a risk of flight, and the danger Ford poses to the community can be mitigated through conditions of release, the likelihood of a reduction of her sentence on appeal is low.

In order to determine whether Ford raises a substantial question on appeal, the Court must consider the arguments made by Ford on appeal. It is not necessary that Ford prove she will prevail, only that there is a close question of law that could be decided either way. *See United States v. Bayko*, 774 F.2d 516, 523 (1st Cir. 1985). Ford advances two main arguments on appeal of her sentence that she argues represent substantial question of law that will likely result in a reduced sentence. First, Ford asserts that the government improperly attributed at least 144.3 grams of fentanyl/cocaine mixture found during the search of Pedro Baez's residence. Second, Ford asserts that this Court made a procedural error by not addressing why the Court agreed with the Probation Office's determination that the drugs in Pedro's house were foreseeable to Ford.

As neither of these issues is likely to result in a lower sentence on appeal, Ford has failed to carry her burden on this factor.

Ford's argument that the Government improperly attributed 144.3 grams of fentanyl/cocaine mixture to her does not raise a substantial question of law. Ford argues that the Government failed to establish that she had actual knowledge of the drugs in Pedro's bedroom, thus they were not foreseeable to her and cannot be attributed to her. When Ford made this objection before and during trial, the Government responded that, "the totality of the circumstances supports . . . that the drugs in the home were reasonably foreseeable to her" based on her close relationship with Pedro Baez, her involvement as a drug runner in the conspiracy, and her frequent stays at Pedro's residence where the drugs were found. At her sentencing, Ford argued that this was not enough to establish knowledge and she continues that argument on appeal, based in part on *United States v. Candelaria-Silva*. 714 F.3d 651 (1st Cir. 2013).

In *Candelaria-Silva*, the First Circuit overturned the defendant's sentence after finding that drugs were attributed to him without a proper basis. *Id.* at 659. The drugs were attributed to the defendant by the lower court based on testimony that assumed a fact not in evidence (incorrectly calculated the weight of drugs involved) and on drug ledgers for drug houses that were not tied to the defendant in any way. *Id.* at 658. The First Circuit found that the totality of the circumstances did not indicate the defendant had any knowledge of the drugs from a different location in the conspiracy and ruled that only the drugs related to his part of the conspiracy could be attributed to him. *Id.* Contrary to Ford's assertion, *Candelaria-Silva* is distinguishable from this case for several reasons, most important of which is that Ford's tie to the drugs in Pedro Baez's home is far stronger. Unlike in *Candelaria-Silva*, Ford admitted to staying in the residence where the drugs were seized, was apprehended in pajamas at the residence when the

drugs were seized, and had regular access to the area where the drugs were kept. In sum, the Government presented several factors that, taken together, indicate that the drugs were foreseeable to Ford and this Court found those factors were sufficient to confer knowledge onto Ford. The Government is only required to prove her knowledge by a preponderance of the evidence, and it has done so here.

Finally, Ford's argument that this Court failed to explain why it agreed with the Government's foreseeability analysis was waived at Ford's sentencing hearing when counsel failed to object. Under Federal Rule of Criminal Procedure 32(i)(3)(B), courts are required to rule on any disputed portion of the presentence report or determine that such ruling is unnecessary because it will not affect sentencing. Courts can satisfy this requirement explicitly or implicitly. *See United States v. Romero*, 906 F.3d 196, 210 (1st Cir. 2018) (implicit resolution can be found where the sentencing judge states that he has read the PSR and sentencing memos, heard arguments from lawyers on both sides, and then adopted the PSR without change). Because this Court stated that it considered all relevant documents and gave both sides the opportunity to be heard before adopting the PSR without change, all objections were implicitly addressed.[1] Accordingly, Ford has not raised a substantial question of law on the matter.

---

[1] However, even if the First Circuit finds there was no implicit resolution, the First Circuit has held in several cases that failure to object to the district court's lack of explanation at sentencing results in a forfeiture of such argument. *See, e.g., United States v. Bedini*, 861 F.3d 10, 20 (1st Cir. 2017). Because Ford did not object for lack of reasoning here, this objection is waived on appeal and a plain error analysis will apply. *Id.*

**Conclusion**

For the reasons stated, Defendant's motion for release pending appeal is **denied**. (Docket No. 800).

**SO ORDERED.**

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**SENIOR DISTRICT JUDGE**